UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOHN DOE,

      Plaintiff,

  -against-

RENSSELAER POLYTECHNIC
INSTITUTE, LeNORMAN J. STRONG,
Interim Vice President of Student Life,
TRAVIS APGAR, Assistant Vice President
and Dean of Students, LARRY HARDY,
Title IX Coordinator, ELIZABETH MARY
BROWN-GOYETTE, Title IX Investigator,
and LESLIE NORTON, Title IX Investigator
and Public Safety Lieutenant,

      Defendants.
-------------------------------------------------------------X

**DECLARATION OF JAMES C. KNOX, ESQ. AND JULIE A. NOCIOLO, ESQ. IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE**

Case No.   1:18-cv-1013 (MAD/DJS)

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
AUG 23 2018
AT_____ O'CLOCK_____
John M. Domurad, Clerk - Albany

  JAMES C. KNOX, ESQ. and JULIE A. NOCIOLO, ESQ., attorneys duly licensed to practice in the United States District Court for the Northern District of New York declare, under the penalty of perjury, as follows:

  1. We are associated with the law firm of E. Stewart Jones Hacker Murphy, LLP, attorneys for the plaintiff in this matter, and are therefore fully familiar with the facts and circumstances of the case.

  2. We make this affirmation in support of plaintiff's Order to Show Cause and upon the complaint accompanying this affirmation.

  3. This affirmation is made upon information and belief, except as to those portions where your affirmant has actual knowledge thereof.

  4. We ask that the Court consider those portions of this affirmation which contain law and the interpretation thereof as if such portions were a memorandum of law.

1

5.  Please see the complaint accompanying this affirmation for a full recitation of the facts of the present case.

### ORDER TEMPORARILY RESTRAINING AND PRELIMINARILY ENJOINING DEFENDANTS FROM IMPOSING ITS SANCTIONS ON PLAINTIFF

6.  "The purpose of a preliminary injunction is to maintain the status quo pending a final determination on the merits." *Diversified Mortg. Investors v. U.S. Life Ins. Co. of New York*, 544 F.2d 571, 576 (2d Cir. 1976).

7.  In proceedings such as the present one involving a challenge to a college or university's determination on a student conduct matter, status quo "has been interpreted to refer to the last uncontested set of facts preceding the pending controversy." *Garshman v. Pennsylvania State University*, 395 F.Supp 912, 920 (M.D. Penn. 1975).

8.  In the present case, the status quo would thus mean the status of the parties prior to the events of June 20, 2017.

9.  "In order to obtain a preliminary injunction, the moving party must demonstrate (1) a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by denying the injunction; (3) whether there will be greater harm to the non-moving party if the injunction is granted; and (4) whether granting the injunction is in the public interest." *Doe v. Pennsylvania State University*, 276 F.Supp.3d 300, 307 (M.D. Pennsylvania 2017); *North American Soccer League, LLC v. United States Soccer Federation, Inc.*, 883 F.3d 32, 36-37 (2d Cir. 2018); *see Benisek v. Lamone*, 138 S.Ct. 1942, 1944 (2018) ("As a matter of equitable discretion, a preliminary injunction does not flow as a matter of course from a plaintiff's showing of a likelihood of success on the merits. Rather, a court must also consider whether the movant has shown that he is likely to suffer irreparable harm in the absence of

preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.") (internal quotation marks and citations omitted).

10. The Second Circuit has held that preliminary relief should be granted "where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)). "A balance of equities tipping in favor of the party requesting [a temporary restraining order] means a balance of the hardships against the benefits." *Napierski v. Guilderland Democratic Cmte.*, No. 18-CV-846, 2018 WL 3546175, at *2 (N.D.N.Y. July 24, 2018); *see Walker v. Bellnier*, No. 17-CV-1008, 2017 WL 5135702, at *12 (N.D.N.Y. Nov. 3, 2017) (holding the same standard applies to a request for a temporary restraining order as a request for a preliminary injunction).

11. "In order to establish a likelihood of success on the merits, movants must show that their chance of prevailing is greater than fifty percent." *Connor v. New York State Com'n on Judicial Conduct*, 260 F.Supp.2d 517, 520 (N.D.N.Y. 2003), *citing Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988). "There may remain considerable room for doubt." *Id.* In other words, the moving party must "make a clear showing of probable success. The party does not need to show that it will ultimately prevail on the merits." *Donohue v. Paterson*, 715 F.Supp.2d 306, 314 (N.D.N.Y. 2010) (internal citations and quotations omitted). District courts are afforded considerable discretion in their determinations. *See Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005).

12.     In *Doe v. Pennsylvania State University*, the court granted a temporary restraining order and preliminary injunction to a male student accused of sexual assault by a female student, enjoining the university from imposing sanctions, including suspension, on the plaintiff. *Pennsylvania State University*, 276 F.Supp.3d at 302.  The Court found that plaintiff had established a likelihood that he would succeed on the merits because, in deviating in several significant ways from its own policies, the university had denied defendant the due process rights guaranteed to him. *See id.* at 308-13.  The Court ruled in this manner, in part, because at plaintiff's hearing, the school neglected to ask plaintiff's accuser eighteen of the twenty-two questions plaintiff had submitted to the panel and in so doing committed a "significant and unfair deviation" from the school's policy, due process, and OCR Title IX guidance guaranteeing accused students the opportunity to confront and cross-examine their accusers. *Id.* at 309

13.     The Court also found that plaintiff's suspension from school represented harm "real, immediate, and irreparable" enough to warrant injunctive relief. *Id.* at 314.  Specifically, the Court reached this conclusion because the notation on his transcript would raise questions among future employer and graduate schools, while, because of his suspension plaintiff would also have to explain "his delayed entry into the workforce." *Id.* at 314-15.

14.     In *Doe v. Middlebury College*, the Court granted a preliminary injunction because the Court found that the College had violated its own policies in adjudicating a sexual misconduct claim against plaintiff, that the suspension it imposed upon plaintiff would be immediately and irreparably harmful to plaintiff, and that the harm to plaintiff far outweighed any potential harm to the College. *See Doe v. Middlebury College*, 2015 WL 5488109, *1-4 (D. Vt. Sept. 16, 2015).  Regarding irreparable harm, the Court held "money damages cannot compensate for the loss of his senior year in college with his class, the delay in the completion of

his degree, or the opportunity to begin his career in July 2016 with this particular employer. Further, Plaintiff would have to explain, for the remainder of his professional life, why his education either ceased prior to completion or contains a gap year." *Id.* at 3.  The Court also determined that, since the college had allowed plaintiff to remain on campus without restriction during its investigation of his alleged actions, little harm would result to the College from continuing that status quo during the pendency of plaintiff' lawsuit. *Id.* at 4.

15. From the cases outlined above, it is clear that preliminary injunctions are proper and essential in educational situations where a university's actions directly and adversely impact the status and future prospects of the student.

16. In the present case, as in *Doe v. Pennsylvania State University*, the school has deviated in significant and detrimental ways from its own policies and Title IX mandated procedure. For example, similar to the hearing board in *Pennsylvania State*, RPI's Hearing Board did not ask the complainant the questions plaintiff had submitted for cross-examination in the manner submitted.

17. RPI also denied plaintiff's due process rights in other ways. While, according to defendants' policies and procedures, the Hearing Board should apply a preponderance of the evidence standard during the hearing, the Hearing Board actually applied a lower standard of evidence to the testimony of plaintiff's accuser. Although Ms. Roe admitted to having, at best, a hazy memory of her encounter with plaintiff, and plaintiff's testimony contradicted her version of events, the Hearing Board still found against plaintiff solely on the basis of her testimony and untested credibility.

18. Additionally, defendants failed to comply with their own policies and procedures that guarantee sequestration of the parties during a hearing as well as equal access to information

throughout the hearing process. Instead, not only did plaintiff cross paths with his accuser's boyfriend (who had threatened plaintiff's life over the phone), but plaintiff was sequestered in a room during his accuser's testimony where he could not actually view that portion of the hearing, denying him the ability to gather any information from that portion of the hearing visually.

19. Next, although his accuser was allowed to refer to a written statement she had purportedly drafted a few days after the incident, plaintiff was prohibited from relying on a previously written statement. Not only did defendants fail to consider this fact in making their credibility determinations, but such a one sided prohibition is plainly contrary to the promises of equal treatment and fairness made throughout defendants' policies and procedures.

20. The Hearing Board also erred by allowing plaintiff's accuser to submit questions for respondent at an improper time. Following plaintiff's testimony, his accuser had the opportunity to submit questions for plaintiff to the hearing board but declined to do so. Plaintiff's witness, pseudonymously known as "Roommate 1" in the accompanying complaint, then testified. Following Roommate 1's testimony, plaintiff's accuser submitted questions for the hearing board to ask plaintiff. This prejudiced plaintiff because it allowed the complainant the benefit of hearing Roommate 1's testimony before formulating her questions for plaintiff. Again, plaintiff did not have this same benefit.

21. Defendants' policies and procedures also requires the school to provide respondents in sexual assault matters with a copy of the outcome of their hearing, together with the hearing board's findings. Although plaintiff received notification of the board's determination and the sanctions imposed upon him, he did not receive a copy of the board's findings, in violation of defendants' own policies and procedures, as well as plaintiff's due process rights.

22. Most egregiously, however, defendants declined to pursue a sexual assault case against Ms. Roe, even though plaintiff brought his claim on the exact same facts and the exact same grounds as his accuser had against him. Indeed, the only difference between plaintiff's and his accuser's claims is their sex; this is blatant evidence of defendants' bias against male students accused of sexual assault that infected the entire conduct proceeding against plaintiff and led to the denial, at every turn, of plaintiff's due process rights, without regard to Title IX, OCR guidance, or defendants' own policies and procedures.

23. As for the courts' second consideration, the harm plaintiff will suffer from defendants' actions and sanctions is no less real, immediate, or irreparable than in *Pennsylvania State University* and *Middlebury College*. Defendant institution is highly respected in the "STEM" fields, and the notation on plaintiff's transcript about sexual assault amounts to a scarlet letter to any graduate program or employer to which plaintiff may apply. Similar to the plaintiff in *Pennsylvania State University*, where the court granted injunctive relief, defendants' suspension here would mean plaintiff would also have to explain "his delayed entry into the workforce." None of these issues could be cured by monetary damages alone.

24. Moreover, even if plaintiff was inclined to transfer out of RPI, he would have difficulty in doing so because his degree program is not available at many other schools and few, if any other institutions carry the prestige of RPI in this field – indeed global technology firms such as Apple and Google regularly recruit RPI graduates from plaintiff's major program. Assuming *arguendo*, that such companies discouraged by the notation on his transcript, plaintiff would also lose such opportunities by transferring away. Doing so is made more impractical still because his courses are so specialized that few other schools would award him transfer credit for the coursework he has already completed.

25. When the potential harm that injunctive relief during adjudication of the present case could cause to defendants is weighed against the harm that denial of the present request would cause to plaintiff, the balance weighs overwhelmingly in plaintiff's favor.

26. Defendants already allowed plaintiff to remain on campus without restrictions for nearly a year after his encounter with his accuser, during the student conduct process. In suspending, rather than expelling plaintiff, defendant has also already indicated its willingness for plaintiff to continue as a member of its campus community.

27. By contrast, as outlined above, plaintiff would suffer harm to his academic progress, his reputation, and his future job prospects, not to mention his mental health, for which he has sought treatment as a result of the student conduct proceeding against him.

28. If it is in the public interest to ensure that everyone – including male students accused of sexual assault – is given equal and full due process before suffering consequences for their alleged actions, then certainly injunctive relief in the present case accomplishes that goal.

29. With all four prongs of the above-outlined test satisfied, this Court should grant the attached order temporarily restraining and preliminary enjoin defendants from enforcing the sanctions against plaintiff for his alleged violations of defendants' policies and procedures. Doing so would maintain the parties' status quo as closely as practicable to the manner in which they existed before the incident giving rise to the present case.

I, James C. Knox, Esq., declare under penalty of perjury, that the foregoing is true and correct. Further, I certify that I am qualitied and authorized to file this declaration. Executed on August 23, 2018.

_____
James C. Knox, Esq.
Bar Roll No. 517109

8

I, Julie A. Nociolo, Esq., declare under penalty of perjury, that the foregoing is true and correct. Further, I certify that I am qualitied and authorized to file this declaration. Executed on August 23, 2018.

*/s/ Julie Nociolo*
Julie A. Nociolo, Esq.
Bar Roll No. 519914